## WHITE v. GOODRICH-LENHART MFG. CO.

(Circuit Court of Appeals, Third Circuit. February 28, 1922. Rehearing Denied April 7, 1922.)

### No. 2711.

Patents ⬗328—1,176,413, for electric wire terminals, held valid and infringed.

The White patent, No. 1,176,413, for an improvement in terminals for electric wires, the novel feature of which is a notch on the curved portion of the plate by which a bite is made into the insulation of the conductor, *held* not limited to a device in which the notch was preformed in manufacture, and, as so construed, *held* not anticipated, valid, and infringed by defendant's device manufactured, so that the notch was formed when the nut was tightened.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in equity for infringement of a patent by Jesse M. White against the Goodrich-Lenhart Manufacturing Company. From a decree dismissing the bill (271 Fed. 336), complainant appeals. Reversed and remanded for entry of a decree for complainant.

Samuel Owen Edmonds, of New York City (Donald S. Edmonds, of Philadelphia, Pa., of counsel), for appellant.

Harvey Lechner and Paul Synnestvedt, both of Philadelphia, Pa., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and LYNCH, District Judge.

DAVIS, Circuit Judge. This is an appeal from a decree of the District Court dismissing the bill of appellant. The court held the patent, No. 1,176,413, issued to Jesse M. White on March 21, 1916, valid, but not infringed.

The patent relates to improvements in terminals for electric wires, designed primarily for use on electric conductors of automobile engines. The device of the patent consists of a metal plate, whose middle part is curved and adapted to be bent around an electric insulated conductor. The ends of the plate, having bolt receiving perforations, when so bent, are positioned side by side. The upper end in the bent portion has a recess or notch by which a bite is made into the insulation of the conductor and a space provided for the nut of the binding post. The naked end of the conductor projects through a slot in the plate in claim 2.

The principal and novel feature of this combination is the notch on the curved or intermediate portion of the metal plate. Mechanically this may be made before the terminal leaves the factory, by especially prepared machinery, or afterward, "on the job," by a nut when screwed down on the binding post when the terminal is first connected in actual use. The learned trial judge held that the novelty of the patent consisted in the notch, but that it must be "preformed," made in the factory, before the terminal was sent out. This conclusion was reached because, among other reasons, he concluded that the object of the

patentee was to dispense with the necessity of solder in terminals: "By preforming the notch there was no need of solder."

It should be observed, however, that there are only two references to solder in any connection in all the prior art patents cited and there is no reference to it whatever in the White patent. The limitation, that the notch must be "preformed," is based upon a statement in the file wrapper made by counsel in his discussions with the Examiner:

\ "The recess or bite in the metal is formed while bending the terminal around the conductor."

No such limitation, express or implied, is contained in the specification or claims of the patent, and in our opinion the statement does not justify reading it into the claims. We find nothing in reason or law to prevent the patentee from purposely so constructing his terminal that when the user, "on the job," screws the nut down on the binding post, the notch in the metal and bite in the insulator will be thereby made, and the device of the patent then and there completed.

Is the patent, so interpreted, valid? The patents cited against White are: Tobey, No. 480,152 (1892); Ash, No. 656,158 (1900); Briggs, No. 908,389 (1908); Ball, No. 899,708 (1908); and Fitzgerald, No. 1,148,-234 (1915). Ball, Briggs, and Fitzgerald were considered by the Patent Office during the prosecution of White's application, and so White's patent was issued with those in mind.

In Ball, the clamp, in Fig 2, incloses the insulated conductor. The insulation is removed from the end of the conductor, and the naked end is turned back, wrapped around the insulated portion, and then inclosed in the clamp with which it makes contact. The intermediate curved portion of the clamp is cut to form a V-shaped figure, and the point thereof is forced inwardly into the insulation. This point has no relation to the nut which fastens the terminal to binding post, as in White. The terminal as a whole is so unlike White's that it cannot be considered an anticipation, as the Patent Office held.

In Briggs, the "clip" is unlike White's metal plate, except in one particular: It has perforated ears; but Briggs does not have a notch or recess in the curved, or any, portion of the clip, nor any consequent bite in the insulation.

In Fitzgerald's clamp, a portion of the wall, called a "tang," is "struck down" from the turn or loop, and the loose wire ends of the conductor are bent back and forced over the "tang," so that there is a piece of the wall of the loop between the conductor and the loose wire ends. When the loop is clamped tight around the conductor, these wire ends are solid and stationary. "This clamping is still stronger when the sides of the clamp are compressed together and the clamp is in place on the electrode." This terminal does not have the notch or bite of White, and its mechanical construction and operation are so different that it cannot be considered a mechanical equivalent.

In Tobey, the ears of the clamp are slotted, and not perforated. The head of the "binding screw" may, in case it is large or the clamp small, indent the clamp and bite the insulation; but that is not probable, for the reason that, as represented in the drawings, that part of the conductor which is inclosed in the clamp has the insulation removed

from it, and no idea of a notch or bite is disclosed in the specification or claims.

In the Ash device, there is a "confiner" or clamp whose ends or "ears" are perforated; the perforation in the upper ear being oblong, and a "thumbscrew" for the binding post. The insulation has been removed from that part of the conductor inclosed in the "confiner." It is apparent from the use of the "thumbscrew," instead of a nut, the removal of the insulation from the portion of the conductor inclosed within the confiner, and the absence of any suggestion of a notch in the confiner and bite in the insulation, that Ash never thought of the novel feature of the White terminal.

We are of opinion that White's patent was not anticipated and is valid, whether the notch is preformed in the factory or made by the user "on the job."

The learned trial judge held that, invention being confined to a preformed notch, the—

"defendant's terminal does not infringe, as it has no such preformed notch. * * * If, however, the notch of the patent is not a preformed notch when the nut comes to be applied, the effect is, as the metal is plastic, that the nut forms the very notch or bite described in the patent. This is the expected result."

As to whether or not the pressure of the nut of the defendant's device would make the notch of the patent, he found that—

"it is so formed in practice, and that the terminal is made as it is made, with the knowledge on the part of the defendant of its intended use, and that this will result in the formation of the notch."

Holding, as we do, that complainant's device is not limited to a "preformed" notch, on the facts found by the District Court, it follows that defendant infringed the White patent.

It should be observed, however, that terminals may be made whose ears are so long and nuts used in connection therewith so small that the notch and bite of the patent would and could not be made by their use. In such terminals, there is, of course, no infringement. If, on the contrary, the defendant so constructs his terminals that the notch and bite of the White patent will be made when they are put in use, "on the job," as the trial judge found, these infringe.

The decree of the District Court is reversed, and the case is remanded for the entry of a decree in conformity with this opinion.